UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JAIME SACAL-MICHA, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 1:20-CV-37 |
| | § | |
| JOSE GARCIA LONGORIA JR, *et al.*, | § | |
| | § | |
| Respondents. | § | |

## **OPINION AND ORDER**

On March 22, 2020, Petitioner Jaime Sacal-Micha (Sacal) filed a Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (Doc. 1), requesting that the Court order his immediate release from immigration detention pending the resolution of his claim under the United Nations Convention Against Torture.[1] Sacal is elderly and has serious underlying medical conditions. He seeks release based on the possibility of a COVID-19 outbreak within the detention center in which he is being held, and the facility's alleged inability to protect him from contracting the virus or providing him with adequate medical attention should he do so.

On March 24, 2020, the Court held a telephonic conference regarding the request for a temporary restraining order. The Court has reviewed the briefing and the exhibits submitted by the parties, as well as the applicable law.[2] For the following reasons, the Court denies the application for a temporary restraining order.

### I. Procedural and Factual Background

Sacal is a sixty-nine-year-old wealthy Mexican citizen with significant real estate

---

[1] Sacal brings suit against Jose Garcia Longoria, Jr. (Officer in Charge, Port Isabel Detention Center), Chad Wolf (Acting Secretary of the Department of Homeland Security), and the United States of America (collectively, the "Respondents").
[2] The Court grants Sacal's Motion for Leave to File Exhibit "M" in Support of Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (Doc. 15) and his Motion for Leave to File Exhibits "N" and "O" in Support of Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (Doc. 16). The Court considers the exhibits attached to those two motions as part of the record.

1 / 14

holdings. He claims he fled Mexico because family members seeking to obtain control of his real estate used their influence to have the government file false criminal charges against him, accusing him of a violent crime against one of his granddaughters. The Mexican government issued an arrest warrant for Sacal's arrest. (Arrest Warrant, Doc. 10)

Sacal vigorously denies the criminal charges, but chose to leave Mexico to avoid arrest and to fight the charges from afar. He planned to reside in his apartment in New York City. On December 2, 2019, he presented himself at a United States port of entry and sought admission with his nonimmigrant visa. (Record of Deportable/Inadmissible Alien, Doc. 9-1) The inspecting officer with United States Customs and Border Protection (CBP) determined that the United States Department of State had revoked Sacal's visa based on the outstanding Mexican arrest warrant. (*Id.*; TECS Record, Doc. 9-2) CBP issued Sacal a Notice of Expedited Removal, charging him as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). As Sacal had expressed a fear of return to Mexico, he was transferred to the custody of United States Immigration and Customs Enforcement (ICE), which detained him at the Port Isabel Detention Center. (Notice of Expedited Removal, Doc. 9-3; Record of Determination/Credible Fear Worksheet, Doc. 9-4)

On December 6, an Asylum Officer conducted the credible-fear interview and concluded that Sacal did not present a credible fear of persecution or torture if returned to Mexico. (Record of Determination/Credible Fear Worksheet, Doc. 9-4) Sacal sought review by an Immigration Judge, who vacated the Asylum Officer's decision and placed Sacal in regular removal proceedings under 8 U.S.C. § 1229a. (Record of Negative Credible Fear Finding/Request for IJ Review, Doc. 9-5) According to Sacal, the Immigration Judge indicated that Sacal could seek relief under the United Nations Convention Against Torture (CAT). (Petition, Doc. 1, ¶ 9)

Sacal then requested that ICE release him on parole. (Emails, Doc. 2, 11-12) On February 11, 2020, ICE decided to not release Sacal based on two key findings, both premised on

the outstanding arrest warrant. First, ICE concluded that Sacal represented a danger to the community. (Record of Determination, Doc. 9-8, 4) Second, the outstanding arrest warrant created "exceptional, overriding factors (e.g., law enforcement interests or potential foreign policy consequences)" that precluded parole. (ICE Decision Ltr., Doc. 9-8, 2)

On March 18, 2020, Sacal's counsel again requested that ICE release him due to his poor health and the COVID-19 pandemic. (Emails, Doc. 2, 2) Sacal's counsel noted that the CAT proceedings would continue for many months, and that Sacal suffers from serious medical conditions. (*Id.*; *see also* Sacal's Medical Records, Doc. 11-1 (diagnosing several health conditions)) Two days later, after an exchange of communications and information, ICE again denied the request: "We have carefully considered your request, and based on the totality of the facts in this case, [] we are denying your request at this time." (Emails, Doc. 2, 1)

The parties agree that during most of Sacal's time in detention, he has been held in the infirmary. (Petition, Doc. 1, ¶ 15; Response, Doc. 8, 7) Sacal does not allege that he has received inadequate care for his current medical conditions.

As of March 24, ICE had not confirmed any cases of COVID-19 in the Port Isabel Detention Center, including the infirmary in which Sacal has received care. (Decl. of Dr. Maribel Cantu, Doc. 9-9) Respondents submit evidence of the protective measures that ICE has implemented to reduce the risk of detainees contracting COVID-19. (*Id.*)

## II. Applicable Standard

Sacal seeks a temporary restraining order requiring his immediate release so that he may reside at a local shelter where he would receive ongoing medical care and have minimal contact with others. (Petition, Doc. 1, ¶ 1) He bases the request for emergency injunctive relief on his petition for writ of habeas corpus and a cause of action under the Administrative Procedure Act.

A temporary restraining order is an equitable remedy that may be granted only if the movant satisfies four requirements: "(1) a substantial likelihood of success on the merits; (2) a

substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest." *Sunbeam Products, Inc. v. West Bend Co.*, 123 F.3d 246, 250 (5th Cir. 1997); *see also Parker v. Ryan*, 960 F.2d 543, 545 (5th Cir. 1992) ("[T]he requirements of rule 65 apply to all injunctions.") (citing FED. R. CIV. P. 65). Failure to establish any of these elements results in the denial of the motion for injunctive relief. *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003) (citation omitted). Such relief is an extraordinary remedy that requires the applicant to unequivocally show the need for its issuance. *See Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997) (citation omitted).

## III. Analysis

Based on the record before it and the applicable law, and for the following reasons, the Court concludes that Sacal has failed to demonstrate a substantial likelihood of success on either of his claims.[3]

### A. Petition for Writ of Habeas Corpus

An individual may seek habeas relief under 28 U.S.C. § 2241 if he is "in custody" under federal authority "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The "sole function" of a habeas petition is to "grant relief from unlawful imprisonment or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). The Fifth Circuit follows a bright-line rule: "If a favorable determination . . . would not automatically entitle [the detainee] to accelerated release, . . . the proper vehicle is a [civil rights] suit." *Carson v. Johnson*, 112 F.3d 818, 820–21 (5th Cir. 1997) (internal citations omitted).

---

[3] In light of the Court's conclusion with respect to the first factor, the Court will not reach the remaining factors for a temporary restraining order. In addition, Respondents argue that Sacal lacks standing because his "claim of future injury is hypothetical". (Response, Doc. 8, 7) The Court also does not reach this issue, but notes that Sacal need not await an actual injury (or illness, in this case) before bringing suit, but must show only that he faces an "unreasonable risk of serious damage to [his] future health". *Farmer v. Brennan*, 511 U.S. 825, 843 (1994) (citation omitted).

A district court possesses inherent authority to grant bail based on a petition for habeas relief, if doing so is required to protect the court's ability to consider the petitioner's claim that has been properly brought before it. But such authority is limited and reserved for unusual circumstances. The petitioner must demonstrate that the habeas petition raises substantial claims and that "extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective." *Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir. 2001). Respondents contest that such authority exists in this case, arguing that Sacal "may only be released from § 1225(b) custody if the Secretary of the Department of Homeland Security (DHS) determines 'on a case-by-case basis' that 'urgent humanitarian reasons or significant public benefit' warrant the alien's release on parole." (Response, Doc. 8, 12 (citing 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 235.3(b)(2)(iii))) But Respondents' argument misses the source of the authority. As applied to the present matter, this Court would not order Sacal's release by finding that the Secretary of DHS should have done so under Section 1182, but only by finding that releasing Sacal is necessary to meaningfully consider Sacal's Petition for Writ of Habeas Corpus and to maintain the possibility of providing effective habeas remedy, should the Court decide that such a remedy is warranted. Such inherent authority does not infringe on the Secretary of DHS's discretion under Section 1182, but rather protects the Court's power to provide meaningful relief based on a claim properly before it.

Still, to obtain emergency injunctive relief, a petitioner must satisfy the controlling requirements, including demonstrating a substantial likelihood of success on the merits of his claims. As a result, as applied to the present case, Sacal must demonstrate that his Petition for Writ of Habeas Corpus presents substantial claims on which Sacal possesses a substantial likelihood of succeeding, and that extraordinary circumstances exist that require his release to make any habeas remedy effective. He fails to meet this exacting standard.

Sacal in his Petition does not present substantial claims on which he is likely to succeed. Importantly, "allegations that challenge rules, customs, and procedures affecting conditions of confinement are properly brought in civil rights actions." *Schipke v. Van Buren*, 239 F. App'x 85, 85–86 (5th Cir. 2007) (citing *Spina v. Aaron,* 821 F.2d 1126, 1127–28 (5th Cir. 1987)). "Typically, habeas is used to challenge the fact or duration of confinement, and 42 U.S.C. § 1983 is used to challenge conditions of confinement." *Poree v. Collins*, 866 F.3d 235, 243 (5th Cir. 2017). District courts have applied these principles to deny a habeas petition based solely on alleged inadequate conditions of incarceration. *See, e.g., Sarres Mendoza v. Barr*, No. CV H-18-3012, 2019 WL 1227494, at *2 (S.D. Tex. Mar. 15, 2019) (denying a Honduran detainee's motion for leave to amend because the proposed claims on "conditions of confinement may not be brought in a habeas corpus proceeding, and are actionable, if at all, in a civil rights action"); *Morales-Corbala v. United States*, No. P-11-CV-00025-RAJ, 2011 WL 13185995, at *3 (W.D. Tex. July 19, 2011), *aff'd*, 498 F. App'x 467 (5th Cir. 2012) (explaining that a habeas petition was improper as the plaintiff was not challenging the "constitutionality of his detention and [did] not ask the Court to release him from [the defendant's] custody").

At the core of his allegations, Sacal challenges the conditions of his confinement. Sacal alleges that "Respondents cannot prevent the Covid-19 virus from infecting" the detention center where he is detained. (Petition, Doc. 1, ¶ 16) He emphasizes that the Constitution requires the Respondents to provide "*other safe conditions of confinement*" (emphasis in original), and that they cannot do so. (*Id.* (quoting *Bos. v. Lafayette Cty., Miss.*, 743 F. Supp. 462, 469 (N.D. Miss. 1990))) He contends that he will be exposed to COVID-19 via the medical staff or other detainees. (Supp. Reply, Doc. 13, 6) And he alleges that because of his failing health, "[c]ontinued detention . . . presents a clear and present danger to his fundamental right to life." (*Id.*)

Sacal effectively alleges that ICE's inability to isolate him successfully, the movement of individuals within the detention facility, and the absence of adequate testing to identify carriers of the virus, all render it a certainty that he will contract the illness if maintained in custody. Those factors focus on the conditions of his confinement. A detention facility's protocols for isolating individuals, controlling the movement of its staff and detainees, and providing medical care are part and parcel of the conditions in which the facility maintains custody over detainees.

Sacal argues that his case does not present the typical challenge to conditions of confinement because ICE cannot implement *any* set of protective measures to protect him from contracting and possibly dying from COVID-19. (Supp. Reply, Doc. 13, 3 (emphasis in original)) In his case, he argues, the impossibility of the detention center being able to protect him amounts to a violation of his constitutional due process right to be safe when detained by the government.

A detainee can establish a constitutional violation based on inadequate conditions of his confinement. But to do so, he must demonstrate that the officials acted with deliberate indifference to his medical needs or his safety. *See, e.g.*, *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (applying the deliberate indifference standard to a cruel and unusual punishment claim); *Baughman v. Garcia*, 254 F. Supp. 3d 848, 868–69 (S.D. Tex. 2017), *aff'd sub nom. Baughman v. Seale*, 761 F. App'x 371 (5th Cir. 2019) (applying the deliberate indifference standard to a due process claim). "Deliberate indifference is shown only when 'the official knows of and disregards an excessive risk to inmate health or safety . . . .'" *Estate of Henson v. Krajca*, 440 F. App'x 341, 344 (5th Cir. 2011) (quoting *Calhoun v. Hargrove,* 312 F.3d 730, 734 (5th Cir. 2002)). Officials disregard a risk to an inmate when they have "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Here, the record does not demonstrate that Sacal is substantially likely to prove that ICE has acted with deliberate indifference with respect to Sacal's health. On the contrary, the record reflects that ICE has provided constant medical attention to Sacal, and has implemented preventative measures to reduce the risk of Sacal contracting COVID-19. Those measures may ultimately prove insufficient. But the implementation of those measures preclude a finding that ICE has refused to care for Sacal or otherwise exhibited wanton disregard for his serious medical needs. In other words, Sacal has not demonstrated that the conditions in which ICE maintains him in custody arise to the level of a constitutional violation.

In addition, Sacal has not demonstrated a substantial likelihood of success on his fundamental argument—i.e., that the detention facility is incapable of protecting him from contracting COVID-19 or providing appropriate medical attention should he be infected. For these propositions, Sacal offers only conclusory arguments based on general articles regarding the highly-contagious nature of COVID-19 and its impact on the elderly and individuals with certain underlying medical conditions. (*See* Petition, Doc. 1, ¶ 16 (citing Staff Report, *2nd travel-related COVID-19 case in RGV confirmed in Harlingen*, Valley Morning Star, Mar. 21, 2020, Doc. 2, 20); *id.* (citing Howard J. Luks, M.D., *Covid-19 Update: 3/14/2020. A Message from Concerned Physicians*, Howard J. Luks, M.D. Orthopedic Surgeon, Mar. 16, 2020, Doc. 2, 22-38); *Coronavirus Reported in US Immigration Prisons*, Associated Press, Mar. 26, 2020, Doc. 15-1, 2-9) But none of the exhibits concern the Port Isabel Detention Center, or even suggest that the measures ICE has implemented there are insufficient.

In addition, Respondents submit evidence of the protective measures they have undertaken to protect Sacal and other detainees. (*See* Decl. of Dr. Maribel Cantu, Doc. 9-9 (explaining that ICE has instituted applicable provisions of a pandemic workforce plan, suspended social visits in all detention facilities, and followed the testing guidelines of the Centers for Disease Control and Prevention (CDC))) Sacal presents no evidence that those

measures are insufficient or deviate materially from CDC's guidelines for institutions that detain individuals. *See Interim Guidance on Management of Coronavirus Disease 2019 (Covid-19) in Correctional and Detention Facilities*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last updated March 23, 2020).

In essence, Sacal contends that a high likelihood exists that many detainees in the Port Isabel Detention Center will contract COVID-19, and that for those who are elderly or suffer from underlying medical conditions that render them prone to the more serious aspects of the virus, the risk of death is significant. Sacal offers no evidence to support these propositions other than conclusions extrapolated from general information. And accepting Sacal's reasoning would logically require the release of all individuals currently detained who are elderly or suffer from certain underlying medical conditions. The law does not require such a generalized result. The decisions by other district courts considering similar requests demonstrate the fact-specific nature of the analysis. *See Vasif "Vincent" Basank, et al., v. Thomas Decker, et al.*, No. 20 Civ. 2518 (S.D.N.Y. Mar. 26, 2020), ECF No. 11 (ordering release of ten immigration detainees held in a county jail with confirmed cases of COVID-19); *Calderon Jimenez v. Wolf*, No. 18 Civ. 10225 (D. Mass. Mar. 26, 2020), ECF No. 507 (ordering release of a detained immigrant held in a county jail with a confirmed case of COVID-19); *United States of America v. Barry Allen Gabelman*, No. 2:20-CR-19 JCM (NJK), 2020 WL 1430378, at *1 (D. Nev. Mar. 23, 2020) (denying motion to reconsider: "The court acknowledges that the spread of COVID-19 may be acutely possible in the penological context, but the court cannot release every detainee at risk of catching COVID-19 because the court would be obligated to release every detainee."); *Dawson v. Asher*, No. C20-0409JLR-MAT, 2020 WL 1304557, at *3 (W.D. Wash. Mar. 19, 2020) (denying request for temporary restraining order: "Plaintiffs do not show that 'irreparable injury is likely

in the absence of an injunction.' [] The 'possibility' of harm is insufficient to warrant the extraordinary relief of a TRO.").[4]

The Court recognizes that the COVID-19 pandemic presents an extraordinary and unique public-health risk to society, as evidenced by the unprecedented protective measures that local, state, and national governmental authorities have implemented to stem the spread of the virus. And it is possible that despite ICE's best efforts, Sacal may be exposed and contract the virus. Moreover, Sacal's age and medical condition render him particularly vulnerable to serious complications from the virus. But the fact that ICE may be unable to implement the measures that would be required to fully guarantee Sacal's safety does not amount to a violation of his constitutional rights and does not warrant his release. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) ("Prison officials must provide humane conditions of confinement and must take reasonable measures to guarantee the safety of inmates."). Sacal has not demonstrated his likelihood of proving that ICE has failed to take reasonable measures to guarantee his safety.

For these reasons, the Court finds that Sacal has not shown a substantial likelihood of success on the merits of his Petition for Writ of Habeas Corpus.

### B. Administrative Procedure Act

Sacal alleges that ICE's denial of his request to be released from detention was "arbitrary, capricious, and an abuse of discretion", in violation of the APA. (Petition, Doc. 1, 8) Respondents argue that the statute itself precludes review by this Court because ICE acted within its discretion under 8 U.S.C. § 1182(d)(5).

The APA allows courts to set aside executive agency action that is arbitrary, capricious, or an abuse of discretion. *See* 5 U.S.C. § 706(2)(A). An agency runs afoul of this standard "if the

---

[4] Sacal also references an Order from the United States Court of Appeals for the Ninth Circuit, in which the court *sua sponte* ordered the release of an immigration detainee. (Order, Doc. 7, 2) In that case, however, the circuit court appears to have been acting within its statutory jurisdiction in an appeal from a ruling by the Board of Immigration Appeals. And the circuit court provided no explanation for its Order. As a result, although the Order shows that courts recognize the threat that COVID-19 represents to detained individuals, it does not provide sufficient information to determine whether the facts of that matter bear resemblance to those before this Court.

agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Tex. Oil & Gas Ass'n v. U.S. E.P.A.*, 161 F.3d 923, 933 (5th Cir. 1998) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The agency must "examine the relevant data and articulate a satisfactory explanation for its action." *Motor Vehicle Mfrs. Assn.*, 463 U.S. at 43.

"If the agency's reasons and policy choices conform to minimal standards of rationality, then its actions are reasonable and must be upheld." *Tex. Oil & Gas Ass'n*, 161 F.3d at 934. While a court can review an agency's decision to determine whether it is arbitrary and capricious, the court "is not to substitute its judgment for that of the agency," and should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 286 (1974); *see also F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009).

Section 702 of the APA waives the Government's sovereign immunity in certain circumstances. First, the plaintiff "must identify some 'agency action' affecting him in a specific way, which is the basis of his entitlement to judicial review." *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 489 (5th Cir. 2014) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990)). Second, the plaintiff must establish that he "suffered legal wrong because of the challenged agency action." *Lujan*, 497 U.S. at 883. A plaintiff advancing such a claim seeks review "pursuant only to the general provisions of the APA." *Alabama-Coushatta Tribe of Texas*, 757 F.3d at 489. In such an action, "[t]here must be 'final agency action' for a court to conclude that there was a waiver of sovereign immunity". *Id.* (citing *Lujan,* 497 U.S. at 882). "If there is no final agency action, a federal court lacks subject matter jurisdiction." *Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011) (citation omitted).

But judicial review under the APA is unavailable when other statutes "preclude judicial review" or when "agency action is committed to agency discretion by law."  5 U.S.C. § 701(a); *Texas v. United States*, 787 F.3d 733, 755 (5th Cir. 2015).  Both limitations apply in this case.  As a result, Sacal has not demonstrated a substantial likelihood of success on his cause of action under the APA.

Subsection 1252(a)(2)(B)(ii) of the REAL ID Act expressly precludes judicial review of ICE's decision whether to grant parole to an immigration detainee: "Notwithstanding any other provision of law (statutory or nonstatutory) . . . , no court shall have jurisdiction to review" any decision placed in the discretion of the Attorney General.  The Fifth Circuit has applied this statutory language to preclude a district court's jurisdiction to review a parole decision for an immigration detainee: "Congress, however, has denied the district court jurisdiction to adjudicate deprivations of the plaintiffs' statutory and constitutional rights to parole."  *Loa-Herrera v. Trominski*, 231 F.3d 984, 990-91 (5th Cir. 2000); *see also Palacios v. Dep't of Homeland Sec.*, 407 F. Supp. 3d 691, 698 (S.D. Tex. 2019) ("[T]his court lacks jurisdiction to review denials of parole under the Immigration and Nationality Act because these actions are committed to agency discretion by law.") (quotations omitted).

In addition, Title 8, United States Code, Section 1182(d)(5)(A) places the decision of granting parole within the discretion of DHS.  *See Ramirez-Mejia v. Lynch*, 794 F.3d 485, 491 n.1 (5th Cir. 2015).  "Regulations provide further requirements and procedures" that DHS considers.  *Palacios,* 407 F. Supp. 3d at 698 (citing 8 C.F.R. § 212.5).  For example, to be paroled, an alien must present "neither a security risk nor a risk of absconding". 8 C.F.R. § 212.5(b).  In the present case, Respondents submit the internal documentation evidencing ICE's exercise of its discretion with respect to Sacal.  (*See* ICE Decision, Doc. 9-8).  Because the applicable statute places this decision solely within DHS discretion, this Court lacks jurisdiction to review it.

During the hearing on Sacal's request for a temporary restraining order, his counsel argued that ICE did not deny parole based on Section 1182(d)(5)(A), but under ICE's inherent authority to release those within its custody. Under this argument, according to Sacal's counsel, the APA's jurisdictional limitation in Section 701 would not apply, because no statute expressly removes the jurisdiction of federal district courts for decisions that ICE makes based on its inherent, as opposed to its statutory, authority. Respondents counter that outside of Section 1182, no authority exists for ICE to grant or deny parole to Sacal. The Court agrees. Sacal has not specified the source of the alleged authority on which ICE acted, and has not controverted ICE's argument that the agency acted under Section 1182.

In addition, even if the Court possessed jurisdiction under the APA to review ICE's decision, the Court would conclude that Sacal has not demonstrated a substantial likelihood of proving that ICE's decision was arbitrary, capricious, or an abuse of discretion. In this matter, ICE exercised its discretion and declined to release Sacal based on two key findings, both premised on the uncontested facts that Sacal currently faces serious criminal charges in Mexico and that an arrest warrant remains pending against him in that country.[5] Based on those uncontested facts, ICE concluded that Sacal represented a danger to the community. (ICE Decision-Form 71-013 (12/09), Doc. 9-8, 2) In addition, ICE found that the arrest warrant raised "law enforcement interests or potential foreign policy consequences" that represented "exceptional, overriding factors" militating against parole. (*Id.*) The Court concludes that in reaching its decision, ICE considered factors that Congress intended it to consider.

Sacal argues that the ICE officer failed to comply with the APA because in his final communication, he provided only the cursory conclusion that based on the "totality of the facts in this case", ICE was denying the request for release. (Emails, Doc. 2, 2) But this argument ignores the entirety of the communications between ICE and Sacal's counsel, and the internal

---

[5] As previously indicated, Sacal vigorously denies those charges. He also presents evidence supporting his contention that family members have used their influence to persuade the Mexican government into pursuing false charges against him. But Sacal does not deny that the charges exist and that the arrest warrant remains outstanding.

documentation detailing the factors that ICE considered. As a result, the fact that the final e-mail from ICE did not detail all of its rationale does not render the decision arbitrary, capricious, or an abuse of discretion.

**IV.    Conclusion**

Based on the record before it, the Court concludes that Petitioner Jaime Sacal-Micha has not demonstrated a substantial likelihood of success on the merits on any of his claims. As a result, the Court declines to issue the requested temporary restraining order.

SIGNED this 27th day of March, 2020.

_____
Fernando Rodriguez, Jr.
United States District Judge