UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JAIME SACAL-MICHA, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 1:20-CV-37 |
| | § | |
| JOSE GARCIA LONGORIA JR, *et al.*, | § | |
| | § | |
| Respondents. | § | |

## OPINION AND ORDER

On March 22, 2020, Petitioner Jaime Sacal-Micha filed a Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (Doc. 1), requesting that the Court order his immediate release from immigration detention pending the resolution of his proceedings under the United Nations Convention Against Torture.[1] Sacal is elderly and has serious underlying medical conditions. He seeks release based on the possibility of a COVID-19 outbreak within the detention center in which he is being held, and the Respondents' alleged inability to protect him from contracting the virus or providing him with adequate medical attention should he do so.

On March 27, 2020, the Court denied Sacal's request for a temporary restraining order, concluding that he had not demonstrated a substantial likelihood of success on the merits of his petition for writ of habeas corpus, or on his cause of action under the Administrative Procedure Act. (Doc. 17)

On April 2, 2020, Sacal filed his First Amended Petition, amending his claims and re-urging his request for immediate release. (Doc. 31) On the same day, Respondents filed their Motion to Dismiss, seeking dismissal of all of Sacal's causes of action. (Doc. 26) Given the nature of the allegations and the requested relief, the Court imposed an expedited briefing schedule regarding the Motion to Dismiss.

---

[1] Sacal brings suit against Jose Garcia Longoria, Jr. (Officer in Charge, Port Isabel Detention Center), Chad Wolf (Acting Secretary of the Department of Homeland Security), and the United States of America (collectively, the "Respondents").

1 / 16

For the following reasons, the Court finds Respondents' Motion well taken.

## I.    Allegations and Procedural Background[2]

Sacal is a sixty-nine-year-old wealthy Mexican citizen with significant real estate holdings. He claims he fled Mexico due to false criminal charges levied against him, accusing him of sexually assaulting one of his granddaughters. (First Am. Pet., Doc. 31, ¶¶ 9-12) The Mexican government issued an arrest warrant for Sacal, and that warrant remains outstanding. (*Id.*) Sacal vehemently denies that he committed the alleged crime. He hid in Mexico for a year while his lawyers fought the charges, but eventually he decided to leave his country and fight from afar, fearing that his arrest in Mexico would place him at risk of torture and death in prison. (*Id.* at ¶ 12)

On December 2, 2019, he presented himself at a United States port of entry and sought admission with his nonimmigrant visa. (*Id.* at ¶ 5) The inspecting officer with United States Customs and Border Protection (CBP) determined that the United States Department of State had revoked Sacal's visa based on the outstanding Mexican arrest warrant. (*Id.* at ¶ 12) CBP issued Sacal a Notice of Expedited Removal, charging him as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). As Sacal had expressed a fear of return to Mexico, he was transferred to the custody of United States Immigration and Customs Enforcement (ICE), which detained him at the Port Isabel Detention Center (PIDC). (Notice of Expedited Removal, Doc. 9-3; Record of Determination/Credible Fear Worksheet, Doc. 9-4)

On December 6, an Asylum Officer interviewed Sacal and concluded that he did not present a credible fear of persecution or torture if returned to Mexico. (First Am. Pet., Doc. 31, ¶¶ 5, 15) Sacal sought review by an Immigration Judge, who vacated the Asylum Officer's decision and placed Sacal in regular removal proceedings under 8 U.S.C. § 1229a. (Record of

---

[2] Respondents base their Motion on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). To consider Respondents' Motion under Rule 12(b)(6), the Court accepts Sacal's allegations as true, and can also consider documents attached to the Petition. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). As to Respondents' Motion under Rule 12(b)(1), the Court may look to the complaint, "the complaint supplemented by undisputed facts evidenced in the record", or the "complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Negative Credible Fear Finding/Request for IJ Review, Doc. 9-5; Credible Fear Review Proceedings Order of the Immigration Judge, Doc. 27) The Immigration Judge found Sacal eligible to apply for relief under the United Nations Convention Against Torture (CAT). (First Am. Pet., Doc. 31, ¶ 5)

Sacal then requested that ICE release him pending his CAT proceedings. (Emails, Doc. 2, 11-12) On February 11, 2020, ICE decided to not release Sacal based on two key findings, both premised on the outstanding arrest warrant. First, ICE concluded that Sacal represented a danger to the community. (Record of Determination, Doc. 9-8, 4) Second, the outstanding arrest warrant created "exceptional, overriding factors (e.g., law enforcement interests or potential foreign policy consequences)" that precluded release. (ICE Decision Ltr., Doc. 9-8, 2)

On March 18, 2020, Sacal's counsel again requested that ICE release him due to his poor health and the COVID-19 pandemic. (Emails, Doc. 2, 2) Sacal's counsel noted that the CAT proceedings would continue for many months, and that Sacal suffers from serious medical conditions. (*Id.*; *see also* Sacal's Medical Records, Doc. 11-1 (diagnosing several health conditions)) Two days later, after an exchange of communications and information, ICE again denied the request: "We have carefully considered your request, and based on the totality of the facts in this case, [] we are denying your request at this time." (First Am. Pet., Doc. 31, ¶ 18)

Since his arrival at PIDC, Sacal has been held in the infirmary due to his failing health. (*Id.* at ¶ 5) Sacal does not allege that he has received inadequate care for his underlying medical conditions.

Sacal alleges that ICE officials are not implementing sufficient measures to prevent his exposure to COVID-19. For example, in his Response, he emphasizes that Respondents are "not even attempting to enforce 'social distancing' or the universal use of masks and gloves". (Response, Doc. 34, 17) Sacal himself has submitted a declaration identifying various alleged inadequacies, including: PIDC allowing "the sick and those who are not sick" to handle and take toiletries from the same box; officials denying his request for wipes to disinfect a phone used by

other detainees or his eating area; and facility employees not uniformly using N95 face masks. (Sacal Decl., Doc. 25) Sacal's counsel also affies that PIDC does not check employee's temperatures when they enter the facility. (Diez Decl., Doc. 25)[3] Sacal alleges that these inadequacies place his life in "grave danger". (First Am. Pet., Doc. 31, ¶ 22)

## II. Applicable Standard

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing FED. R. CIV. P. 12(b)(1)). Federal district courts are of limited jurisdiction and may hear only those cases authorized by a federal statute, the Constitution or a United States treaty. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161. "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.*

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); FED. R. CIV. P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's complaint need not contain detailed factual allegations, but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. These allegations, assuming they are true, "must be enough to raise a right to relief above the speculative level." *Id.*

---

[3] Respondents argue that through these declarations, Sacal seeks to amend his Petition without leave of Court, and requests that the Court disregard the declarations. (Reply, Doc. 39, 1, 6-8) The Court does not consider the declarations as raising a new cause of action based on the specific alleged inadequacies. The Court summarizes some of the information in the declarations to provide context to the allegations in the First Amended Petition, but ultimately, the specific information does not impact the Court's decision.

## III. Analysis

In his First Amended Petition, Sacal includes his petition for writ of habeas corpus, as well as causes of action under the Administrative Procedure Act, "directly under the Fifth Amendment of the U.S. Constitution, (unconstitutional conditions of confinement)", and in equity. (First Am. Pet., Doc. 31, 1)[4]

### A. Petition for Writ of Habeas Corpus

An individual may seek habeas relief under 28 U.S.C. § 2241 if he is "in custody" under federal authority "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The "sole function" of a habeas petition is to "grant relief from unlawful imprisonment or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). The Fifth Circuit follows a bright-line rule: "If a favorable determination . . . would not automatically entitle [the detainee] to accelerated release, . . . the proper vehicle is a [civil rights] suit." *Carson v. Johnson*, 112 F.3d 818, 820–21 (5th Cir. 1997) (internal citations omitted).

Sacal does not allege that Respondents maintain custody over him in violation of a law of the United States. Instead, Sacal alleges that his detention violates his constitutional due process rights under the Fifth Amendment. As a result, Sacal must demonstrate that his allegations present a viable claim for infringement of his constitutional rights that can be addressed through habeas corpus.

"Typically, habeas is used to challenge the fact or duration of confinement . . . ." *Poree v. Collins*, 866 F.3d 235, 243 (5th Cir. 2017). "[A]llegations that challenge rules, customs, and procedures affecting conditions of confinement are properly brought in civil rights actions." *Schipke v. Van Buren*, 239 F. App'x 85, 85–86 (5th Cir. 2007) (citing *Spina v. Aaron,* 821 F.2d 1126, 1127–28 (5th Cir. 1987)). District courts have applied these principles to deny habeas

---

[4] In the introductory paragraph to his First Amended Petition, Sacal indicates that he also sues under the Declaratory Judgment Act. But the First Amended Petition does not again reference this statute, including within the section containing the "Causes of Action". The Court concludes that Sacal does not pursue a cause of action under the Declaratory Judgment Act.

relief based solely on alleged inadequate conditions of detention. *See, e.g., Sarres Mendoza v. Barr*, No. CV H-18-3012, 2019 WL 1227494, at *2 (S.D. Tex. Mar. 15, 2019) (denying a Honduran detainee's motion for leave to amend because the proposed claims on "conditions of confinement may not be brought in a habeas corpus proceeding, and are actionable, if at all, in a civil rights action"); *Morales-Corbala v. United States*, No. P-11-CV-00025-RAJ, 2011 WL 13185995, at *3 (W.D. Tex. July 19, 2011), *aff'd*, 498 F. App'x 467 (5th Cir. 2012) (explaining that a habeas petition was improper as the plaintiff was not challenging the "constitutionality of his detention and [did] not ask the Court to release him from [the defendant's] custody"). Even when a petitioner alleges that inadequate conditions of confinement create the risk of serious physical injury, illness, or death, a petition for a writ of habeas corpus is not the proper vehicle for such a claim. *See, e.g.*, *Spencer v. Bragg*, 310 F. App'x 678, 679 (5th Cir. 2009) (affirming the lower court's dismissal of petitioner's habeas claim even though he alleged that the conditions of confinement endangered his life); *Northup v. Thaler*, No. CA C-12-16, 2012 WL 4068676, at *2 (S.D. Tex. Aug. 7, 2012), *report and recommendation adopted*, No. CIV.A. C-12-16, 2012 WL 4068997 (S.D. Tex. Sept. 14, 2012) (dismissing petitioner's habeas claim based on alleged risk of abuse by other inmates).

At its core, Sacal's lawsuit challenges the conditions of his confinement. He admits as much by alleging that he seeks to "enforce[e] [his] rights to be held under safe conditions". (First Am. Pet., Doc. 31, ¶ 31) And his factual allegations confirm the nature of his lawsuit. He alleges that "[t]he conditions under which [he] is detained are life-threatening." (*Id.* at ¶ 8) He details the procedures that Respondents should be implementing at PIDC, such as prohibiting visitors, requiring the use of gloves and masks, and sanitizing food and materials. (*Id.* at ¶¶ 2-3) And he emphasizes that the Constitution requires the Respondents to provide "*safe conditions of confinement*", and that they cannot do so. (*Id.* at ¶ 21 (emphasis in original)) Through these and similar allegations, Sacal effectively alleges that ICE's inability to isolate him successfully, to adequately restrict the movement of individuals within the detention facility, and to adequately

test detainees to identify carriers of the virus, all render it a certainty that he will contract COVID-19 if maintained in custody. Such allegations focus on the conditions of confinement, as a detention facility's protocols for isolating individuals, controlling the movement of its staff and detainees, and providing medical care are part and parcel of the conditions in which the facility maintains custody over detainees. *See, e.g.*, *Cadena v. El Paso County*, 946 F.3d 717 (5th Cir. 2020) (analyzing allegations regarding inadequate medical care as a conditions-of-confinement claim); *Galada v. Payne*, 421 F. App'x 460, 462 (5th Cir. 2011) (analyzing allegations of overcrowding as a conditions-of-confinement claim); *Hawkins v. Montague Cty., Texas*, No. 7:10-CV-19-O, 2012 WL 13019680, at *2 (N.D. Tex. Aug. 1, 2012) (considering allegations of an "inadequate medical care system" as a conditions-of-confinement claim).

Sacal argues that he does not challenge the conditions of his detention "in the sense those terms are used in the case law cited", because in this case, Respondents are "either incapable or unwilling to create conditions that could protect him from exposure to the virus". (Response, Doc. 34, 14) He alleges that Respondents "cannot prevent the Covid-19 virus from infecting PIDC" and "cannot protect *anyone* at PIDC from contracting the virus". (First Am. Pet., Doc. 31, ¶ 22 (emphasis in original)) And he argues that this fact and the extraordinary circumstances created by the pandemic create a violation of his constitutional right to due process while in custody that the Court can address in habeas corpus.

To be sure, a detained individual can establish the infringement of his constitutional rights based on inadequate conditions of confinement. "[T]he State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement". *Hare v. City of Corinth*, 74 F.3d 663, 650 (5th Cir. 1996).[5] "Constitutional challenges by pretrial detainees may be brought under two alternative theories:

---

[5] Individuals detained pending the results of their asylum proceedings are pretrial detainees whose "constitutional claims are considered under the due process clause instead of the Eighth Amendment." *Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)).

as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009).

In a condition-of-confinement case, "the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). If the analysis reveals that "a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 539. The Fifth Circuit has explained the application of the standard when a pretrial detainee alleges that the conditions of his confinement threaten physical health:

> [I]solated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate. Nor can the incidence of diseases or infections, standing alone, imply unconstitutional confinement conditions, since any densely populated residence may be subject to outbreaks. . . . Rather, a detainee challenging jail conditions must demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs; any lesser showing cannot prove punishment in violation of the detainee's Due Process rights.

*Shepherd*, 591 F.3d at 454.

On the other hand, if the pretrial detainee bases the lawsuit on an officer's episodic act or omission, he must demonstrate that the official acted with deliberate indifference to his medical needs or his safety. *See, e.g.*, *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (applying the deliberate indifference standard to a cruel and unusual punishment claim); *Baughman v. Garcia*, 254 F. Supp. 3d 848, 868–69 (S.D. Tex. 2017), *aff'd sub nom. Baughman v. Seale*, 761 F. App'x 371 (5th Cir. 2019) (applying the deliberate indifference standard to a due process claim). "Deliberate indifference is shown only when 'the official knows of and disregards an excessive risk to inmate health or safety . . . .'" *Estate of Henson v. Krajca*, 440 F. App'x 341, 344 (5th Cir. 2011) (quoting *Calhoun v. Hargrove,* 312 F.3d 730, 734 (5th Cir. 2002)). Officials disregard a risk to an inmate when they have "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Criminal*

*Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

But Sacal cites to no controlling decision that has applied either of these legal theories to order the release of an individual from detention based on a petition for writ of habeas corpus.[6] Sacal quotes from various decisions of the Supreme Court of the United States in support of his Petition, but none of those cases involved a pretrial detainee utilizing a petition for writ of habeas corpus to challenge the conditions of his confinement and obtain release. Rather, those cases concerned detainees seeking damages or injunctive relief that ordered improved conditions. (*See* First Am. Pet., Doc. 31, ¶¶ 21, 29-30, 32 (citing *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) (concerning a class action suit for damages in a *Bivens* action, as well as a claim under 42 U.S.C. § 1985); *Farmer v. Brennan*, 511 U.S. 825 (1994) (concerning a suit for damages in a *Bivens* action, as well as an injunction requiring adequate protection for the plaintiff); *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189 (1989) (addressing a suit under 42 U.S.C. § 1983); *Youngberg v. Romeo*, 457 U.S. 307, 309 (1982) ("Respondent sued under 42 U.S.C. § 1983 three administrators of the institution, claiming damages for the alleged breach of his constitutional rights.").[7]

---

[6] Sacal quotes from a decision of the Western District of New York, where that court found "that holding the petitioners in the current conditions at the BFDF during the COVID-19 epidemic violates their substantive due process rights." (Response, Doc. 34, 9 (quoting *Jones v. Wolf*, 20-cv-361, 2020 WL 1643857, *1 (W.D. N.Y. April 2, 2020)) And other courts, in cases involving petitions for writs of habeas corpus, have ordered the immediate release of immigration detainees due to the COVID-19 pandemic. *See, e.g.*, *Avendano Hernandez v. Decker*, No. 20-CV-1589 (JPO), 2020 WL 1547459, at *1 (S.D.N.Y. Mar. 31, 2020); *Basank v. Decker*, No. 20 CIV. 2518 (AT), 2020 WL 1481503 (S.D.N.Y. Mar. 26, 2020). But those cases arose in the Second Circuit, which has recognized habeas corpus as a permissible avenue for relief from alleged inadequate conditions of confinement. *See, e.g., Jones*, 2020 WL 1643857, * 14 (acknowledging that "[c]ourts are divided on whether section 2241 provides a vehicle for challenging (and a remedy for addressing) allegedly unconstitutional conditions of confinement", and citing Second Circuit jurisprudence holding that habeas relief is available in a conditions-of-confinement case). The Fifth Circuit has not recognized such a claim.

[7] *Shepherd* demonstrates how pretrial detainees can obtain a remedy outside of habeas corpus based on inadequate medical care while in custody. In that case, the Fifth Circuit affirmed judgment on a jury verdict in favor of a pretrial detainee who suffered a stroke when the county jail failed to administer medicine needed to control his hypertension. 591 F.3d at 445. Sacal correctly notes that he cannot avail himself of 42 U.S.C. §1983, the statute on which the pretrial detainee in *Shepherd* relied. But Sacal has not demonstrated that he would have no civil remedies if wronged while in the custody of ICE. Although the Court makes no findings regarding any Respondents' possible liability if Sacal contracts COVID-19, immigration detainees have presented viable claims based on alleged injuries from inadequate medical care. *Cf. Harvey v. United States*, No. 14 CIV. 1787 (PAC), 2017 WL 2954399 (S.D.N.Y. July 10, 2017) (denying a motion to dismiss a claim under the Federal Tort Claims Act brought by the widow of an immigration detainee who died while in ICE custody); *Banderas v. United States*, No. CV 08-6594 PSG (CTX), 2012 WL 12506785 (C.D. Cal. May 29, 2012) (concluding that an immigration civil detainee had "proven a case of medical negligence"); *Lin Li Qu v. Cent. Falls Det. Facility Corp.*, 717 F. Supp. 2d 233 (D.R.I. 2010) (denying motion to dismiss claims based on an immigration detainee's allegations of negligent medical care while in ICE custody).

In addition, the First Amended Petition contains no allegations that square directly with either of these legal theories. Sacal does not allege that the conditions under which he is being held amount to punishment. He does not allege that Respondents have refused to treat him or have intentionally treated him incorrectly. Indeed, Sacal confirms that Respondents have maintained him in the infirmary to provide health care for his underlying medical conditions. (First Am. Pet., Doc. 31, ¶ 5)

In his Response and supplemental submissions to the Court, Sacal clarifies that he relies on the theory of deliberate indifference. (Response, Doc. 34, 17 ("Respondents have displayed deliberate indifference to Mr. Sacal's health and safety."); Exh. X in Support of Motion for Leave to File First Amended Petition, Doc. 37 (submitting supplemental exhibit that allegedly shows Respondents' "'deliberate indifference' to the risk to detainees at PIDC, and specifically, to Mr. Sacal, of contracting the virus"); Exh. Y in Support of Motion for Leave to File First Amended Petition, Doc. 38 ("This, too, reflects deliberate indifference to the fate of all connected to PIDC, including Mr. Sacal.")) In particular, in his Response, Sacal details many alleged failures by Respondents that subject PIDC's detainees and staff members to a greater risk of contracting COVID-19. (Response, Doc. 34, 17-18 (claiming that Respondents do not check the temperatures of employees or contractors, and refuse to provide hand sanitizer or disinfectant wipes "when requested")). But ultimately, Sacal does not assert that Respondents are doing nothing to protect him, other detainees, and staff members from COVID-19, but only that Respondents are not doing *enough*. (*See* First Am. Pet., Doc. 31, ¶¶ 2-3 (detailing steps that Sacal's counsel requested that Respondents implement); Response, Doc. 34, 17 (arguing that the "baby steps" Respondents have taken in response to COVID-19 are inadequate)). Such allegations resemble those in cases in which detained individuals allege that the government institution has provided them with inadequate care or protection. Courts have refused to provide habeas relief even when the claimed inadequacies allegedly placed the petitioner in grave peril.

Given that Sacal challenges the conditions of his confinement at PIDC, he cannot rely on a petition for writ of habeas corpus to obtain the relief he requests. As a result, this claim is subject to dismissal for failure to state a claim upon which relief can be granted.[8]

## B. Administrative Procedure Act

Sacal presents a cause of action under the APA, alleging that ICE's denial of his request to be released from detention represents "final agency action" that was "arbitrary, capricious, and an abuse of discretion". (First Am. Pet., Doc. 31, ¶¶ 7, 24) Respondents argue that no jurisdiction exists over the APA claim because applicable statutes strip district courts of jurisdiction to review agency actions regarding Section 1182(d)(5) parole decisions and place such decisions in the discretion of the agency. (Motion, Doc. 26, 16) In his Response, Sacal presents no argument in support of his APA claim.

The APA allows courts to set aside executive agency action that is arbitrary, capricious, or an abuse of discretion. *See* 5 U.S.C. § 706(2)(A). An agency runs afoul of this standard "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Tex. Oil & Gas Ass'n v. U.S. E.P.A.*, 161 F.3d 923, 933 (5th Cir. 1998) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The agency must "examine the relevant data and articulate a

---

[8] In its Opinion and Order denying emergency injunctive relief, the Court noted its inherent authority to order the release of a detained individual who has presented a petition for writ of habeas corpus, if doing so was required to protect the court's ability to consider the merits of the petition. (Opinion and Order, Doc. 17, 5) The Court cited to *Mapp v. Reno*, 241 F.3d 221 (2nd Cir. 2001), a case on which Sacal relied, for the basic standard that courts apply when considering such relief. (Op. & Order, Doc. 17, at 5 ("The petitioner must demonstrate that the habeas petition raises substantial claims and that 'extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective.'") The same standard applies in the Fifth Circuit. *See, e.g., Calley v. Callaway*, 496 F.2d 701 (5th Cir. 1974) (per curiam). In its Opinion and Order, the Court did not reach whether district courts can grant bail or otherwise release an immigration detainee because an asylum officer has wrongfully refused to do so. As Respondents point out in their Motion, Title 8, United States Code, Section 1225(b) generally precludes judicial review of this discretionary decision. In connection with his claim for habeas relief, however, Sacal does not ask this Court to review the asylum officer's decision to not release him. Rather, Sacal requests that the Court grant habeas relief because he is being held in conditions that violate the Constitution. That request presents a different question. But given the Court's conclusion concerning Sacal's petition for writ of habeas corpus, the Court need not reach that question in this Opinion and Order.

satisfactory explanation for its action." *Motor Vehicle Mfrs. Assn.*, 463 U.S. at 43.

"If the agency's reasons and policy choices conform to minimal standards of rationality, then its actions are reasonable and must be upheld." *Tex. Oil & Gas Ass'n*, 161 F.3d at 934. While a court can review an agency's decision to determine whether it is arbitrary and capricious, the court "is not to substitute its judgment for that of the agency," and should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 286 (1974); *see also F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009).

Section 702 of the APA waives the Government's sovereign immunity in certain circumstances. First, the plaintiff "must identify some 'agency action' affecting him in a specific way, which is the basis of his entitlement to judicial review." *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 489 (5th Cir. 2014) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990)). Second, the plaintiff must establish that he "suffered legal wrong because of the challenged agency action." *Lujan*, 497 U.S. at 883. A plaintiff advancing such a claim seeks review "pursuant only to the general provisions of the APA." *Alabama-Coushatta Tribe of Texas*, 757 F.3d at 489. In such an action, "[t]here must be 'final agency action' for a court to conclude that there was a waiver of sovereign immunity". *Id.* (citing *Lujan,* 497 U.S. at 882). "If there is no final agency action, a federal court lacks subject matter jurisdiction." *Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011) (citation omitted).

Judicial review under the APA is unavailable when other statutes "preclude judicial review" or when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a); *Texas v. United States*, 787 F.3d 733, 755 (5th Cir. 2015). Both limitations apply in this case.

Subsection 1252(a)(2)(B)(ii) of the REAL ID Act expressly precludes judicial review of ICE's decision whether to grant parole to an immigration detainee: "Notwithstanding any other provision of law (statutory or nonstatutory) . . . , no court shall have jurisdiction to review" any decision placed in the discretion of the Attorney General. The Fifth Circuit has applied this

statutory language to preclude a district court's jurisdiction to review a parole decision for an immigration detainee: "Congress, however, has denied the district court jurisdiction to adjudicate deprivations of the plaintiffs' statutory and constitutional rights to parole." *Loa-Herrera v. Trominski*, 231 F.3d 984, 990-91 (5th Cir. 2000); *see also Palacios v. Dep't of Homeland Sec.*, 407 F. Supp. 3d 691, 698 (S.D. Tex. 2019) ("[T]his court lacks jurisdiction to review denials of parole under the Immigration and Nationality Act because these actions are committed to agency discretion by law.") (quotations omitted).

In addition, Title 8, United States Code, Section 1182(d)(5)(A) places the decision of granting parole within the discretion of DHS. *See Ramirez-Mejia v. Lynch*, 794 F.3d 485, 491 n.1 (5th Cir. 2015). "Regulations provide further requirements and procedures" that DHS considers. *Palacios,* 407 F. Supp. 3d at 698 (citing 8 C.F.R. § 212.5). For example, to be paroled, an alien must present "neither a security risk nor a risk of absconding". 8 C.F.R. § 212.5(b). In the present case, Respondents submit the internal documentation evidencing ICE's exercise of its discretion with respect to Sacal. (*See* ICE Decision, Doc. 9-8). Because the applicable statute places this decision solely within DHS discretion, this Court lacks jurisdiction to review it under the APA.

### C. Direct Claim under the Fifth Amendment and in Equity

Sacal alleges that if "habeas corpus is not the appropriate vehicle for enforcing [his] right to be held under safe conditions, then the action must be brought directly under the Fifth Amendment, or in Equity." (First Am. Pet., Doc. 31, ¶ 32) In support of these causes of action, Sacal relies upon various decisions from the Supreme Court of the United States and the Fifth Circuit. (First Am. Pet., Doc. 31, ¶¶ 29-34 (citing *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017); *Farmer v. Brennan*, 511 U.S. 825 (1994); *Youngberg v. Romeo*, 457 U.S. 307 (1982); *Addington v. Texas*, 441 U.S. 418 (1979); *Humphrey v. Cady*, 405 U.S. 504 (1972); *Texas Co. v. Miller*, 165 F.2d 111 (5th Cir. 1947); *Jones v. Campbell-Taggart Assoc' Bakeries*, 63 F.2d 58 (5th Cir. 1933))

These authorities, however, do not support recognition of Sacal's causes of action under the Fifth Amendment or in equity.

"[T]he federal courts, and [the Fifth Circuit] in particular, have been hesitant to find causes of action arising directly from the Constitution." *Hearth, Inc. v. Department of Public Welfare*, 617 F.2d 381, 382 (5th Cir. 1980); *see also Alexander v. Trump*, 753 F. App'x 201, 206 (5th Cir. 2018) (quoting *Hearth, Inc.*, 617 F.2d at 382). Some exceptions exist, such as the establishment of a *Bivens* action. *Hearth, Inc.*, 617 F.2d at 382 (citing *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) as one "notable exception" to the general rule). These exceptions were "necessitated primarily by the absence of alternative remedies." *Hearth, Inc.*, 617 F.2d at 382. Here, Sacal has not demonstrated an absence of alternative remedies that would warrant recognizing his cause of action directly under the Fifth Amendment.

The Court also finds no merit in Sacal's request that the Court provide relief in equity. Sacal relies on the memorable maxim that "equity will not suffer a wrong without a remedy." (Response, Doc. 31, ¶ 33 (quoting *Texas Co. v. Miller*, 165 F.2d 111, 117 (5th Cir. 1947)) While that principle holds true, courts in this circuit have applied it primarily in business matters. *See, e.g., Texas Co.,* 165 F.2d at 111 (involving a bankruptcy estate unjustly enriched at the expense of the plaintiff); *Jones v. Campbell-Taggart Assoc. Bakeries*, 63 F.2d at 60 ("Equity and good conscience require that the transaction be set aside and the parties restored to their previous positions."). The Court finds no grounds to apply the principle to the current lawsuit.

In any event, even if the Court recognized Sacal's claim in equity, the Court would not order his release. In equity, the Court could consider all relevant factors, including the undisputed fact that Sacal is a fugitive fleeing from an outstanding arrest warrant for the charge of sexual assault of a minor. It is true that Sacal strongly denies the charges, and presents evidence raising doubts about the motivations of family members who reported the alleged crime. But the Court does not have to disregard the existence of a foreign arrest warrant

because the accused claims his innocence. While the family dispute appears genuine, the overall circumstances raise concerns whether Sacal poses a risk to the community were he to be released. In addition, he admits that in the past, when a family member threatened "to publicize in the Jewish community a claim that Mr. Sacal's three-year-old grandson had told them that he had sexually assaulted him", rather than report the attempted extortion, Sacal effectively bought their silence by transferring real estate to them. (First Am. Pet., Doc. 31, ¶ 10) This admission raises concerns about Sacal's willingness to work outside the public justice system when he deems it beneficial. His counsel represents that Sacal would reside at a refuge and is amenable to electronic monitoring and other restrictions. But Sacal also admits that he possesses significant financial resources, which despite his counsel's best efforts, could provide him with options that pose a flight risk, especially when considering that he faces possible deportation and has already fled his home country to avoid prosecution. Considering all these factors, the Court would not order Sacal's release in equity.

## IV. Conclusion

The Court recognizes that the COVID-19 pandemic presents an extraordinary and unique public-health risk to society, as evidenced by the unprecedented protective measures that local, state, and national governmental authorities have implemented to stem the spread of the virus. And many voices have expressed concern regarding the particular risk that detained individuals face. (*See, e.g.,* Coronavirus Reported in US Immigration Prisons, Associated Press, Mar. 26, 2020, Doc. 15-1, 2-9)

It is possible that despite ICE's best efforts, Sacal may be exposed and contract COVID-19, although it is without doubt that the Court and the parties hope he does not. Authorities agree that were Sacal to contract the illness, an individual of his age and medical condition is particularly vulnerable to serious complications from the virus.

But even extraordinary circumstances do not enable the Court to reach beyond the application of the law as it exists. The fact that ICE may be unable to maintain the conditions

required to fully guarantee Sacal's safety does not present a viable claim in habeas corpus. And his remaining claims do not present a viable path for him to obtain court-ordered release. Based on the record before it, the Court concludes that as to the petition for writ of habeas corpus and causes of action under the Fifth Amendment and in equity, Sacal has not presented a claim upon which relief can be granted. In addition, the Court concludes it does not possess jurisdiction over Sacal's APA claim.

As a result, it is:

**ORDERED** that Respondents' Motion to Dismiss Petitioner's First Amended Complaint (Doc. 26) is **GRANTED**;

**ORDERED** that the Petition for Writ of Habeas Corpus is **DENIED**;

**ORDERED** that the cause of action under the Administrative Procedure Act is **DISMISSED** for lack of subject matter jurisdiction; and

**ORDERED** that the causes of action under the Fifth Amendment and in equity are **DISMISSED** for failure to state a claim upon which relief can be granted.

This is a final and appealable judgment.

SIGNED this 9th day of April, 2020.

_Fernando Rodriguez, Jr._
Fernando Rodriguez, Jr.
United States District Judge